UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSE LEAF CLEANING, INC.,<br><br>        Plaintiff,<br><br>     -v.-<br><br>SONDER HOSPITALITY USA, INC.,<br><br>        Defendant. | 22 Civ. 7462 (JHR)<br><br><u>OPINION AND ORDER</u> |

JENNIFER H. REARDEN, District Judge:

  Plaintiff Rose Leaf Cleaning Inc. ("Plaintiff," or "Rose Leaf") brings this action against

Sonder Hospitality USA Inc. ("Defendant," or "Sonder") for breach of contract, breach of the

implied covenant of good faith and fair dealing, fraud in the inducement, and tortious

interference. *See* ECF No. 28 (Am. Compl.). Before the Court is Defendant's motion to dismiss

the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 42.

For the reasons set forth below, Defendant's motion is GRANTED, and the Amended Complaint

is DISMISSED without prejudice.

# I.  BACKGROUND

## A.  Factual Background[1]

  Rose Leaf "is a New York corporation that . . . provide[s] staffed housekeeping services

to commercial enterprises." Am. Compl. ¶ 11. At all times relevant to this matter, Stephen

Rosenblatt ("Rosenblatt") managed Rose Leaf, while Michael Fishman ("Fishman") functioned

as its Chief Executive Officer and Chief Operating Officer. *Id.* ¶ 14. Sonder is a "venture

---

[1] The following facts are drawn from the Amended Complaint and Exhibit A thereto: the Sonder
Housekeeping Services Agreement, dated as of November 22, 2021, *see* Am. Compl. Ex. A
(Agreement). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002) ("[T]he
complaint is deemed to include any written instrument attached to it as an exhibit or any
statements or documents incorporated in it by reference.").

capital-backed hospitality startup. . . .[that] leases apartments and converts them into furnished, short-term rentals." *Id.* ¶¶ 15-16.

In 2019, Rose Leaf began providing services to Sonder pursuant to a written service agreement dated March 4, 2019. *Id.* ¶ 20. Thereafter, "[b]etween March of 2019 and March of 2020, the parties jointly experienced significant growth in their business relationship based on the excellent service of Rose Leaf." *Id.* ¶ 25. "By way of example, Rose Leaf went from providing services for six units in 2019 to over 120-150 units daily in March of 2020." *Id.* ¶ 26. Rose Leaf alleges that, "[b]ecause of [its] consistently excellent performance, the parties agreed that Rose Leaf's rate would increase 7%." *Id.* ¶ 27.

In March 2020, however, "[d]ue to the impact of COVID-19 on business, Sonder requested rate reductions and added staffing requests from Rose Leaf that altered the terms of the original service agreement." *Id.* ¶ 29. Rose Leaf "agreed to a reduction by 7% in its rate for Sonder." *Id.* ¶ 30. On April 7, 2020, the parties executed the Housekeeping Services Agreement (the "2020 Agreement"), which amended their original agreement. *Id.* ¶ 21. The 2020 Agreement was to expire on December 31, 2021. *Id.*

Rose Leaf alleges that, on numerous occasions beginning in 2021, Sonder's representatives—namely, Senior Program Manager of Housekeeping Myron Washington ("Washington"), General Manager Greg Klein ("Klein"), Senior Operations Manager Michael Keith ("Keith"), and Michael Lidh ("Lidh")—made numerous "misrepresentations of present fact" to Rosenblatt and Fishman. *Id.* ¶¶ 36, 46-49, 55(a)-(e). These representatives supposedly began making the alleged misrepresentations in August 2021, when "Sonder approached Rose Leaf with a proposed new service agreement that it made enticing because the payments from Sonder would be based on the number of cleaners," *id.* ¶ 45, as opposed to "the per-room billing system" of the 2020 Agreement, *id.* ¶ 44. On August 24, 2021, representatives from both parties

met to discuss the proposed terms of the new agreement. *Id.* ¶ 46. Washington, Lidh, and Klein attended on behalf of Sonder. *Id.* Rosenblatt and Fishman attended on behalf of Rose Leaf. *Id.* Rose Leaf alleges that, during the August 24, 2021 meeting, Washington stated that "Sonder wanted to implement [Sonder's new operating model] in New York . . . through Rose Leaf," *id.* ¶ 47; that "he wanted Rose Leaf on the new model as soon as possible," *id.* ¶ 48; that "Rose Leaf would act as the 'primary' housekeeping vendor for Sonder," *id.* ¶ 55(a)(i); and that "Rose Leaf's business relationship with Sonder was 'long-term' with more opportunities for growth," *id.* ¶ 55(a)(ii). Lidh, meanwhile, "praised Rose Leaf for how happy Sonder was with Rose Leaf's cleaning services and suggested that Rose Leaf host a 'Housekeeper Appreciation' event at Sonder's premiere building, . . offer[ing] to have Sonder contribute to half of the costs of the event." *Id.* ¶ 49. At the Housekeeper Appreciation event, which was held on September 14, 2021, *id.* ¶ 50, Washington "pulled Mr. Rosenblatt and Mr. Fishman aside . . . to praise how well Rose Leaf had been performing. . . . [and] expressed that he wanted Rose Leaf to transition to the new operational model as soon as possible," *id.* ¶¶ 53-54.

Rose Leaf further alleges that, "[d]uring the negotiations over the new services agreement, Sonder's representatives made . . . representations to Mr. Rosenblatt and Mr. Fishman[.]" *Id.* ¶ 55. In particular, Rose Leaf avers that two of Sonder's representatives "separately each told Mr. Rosenblatt and Mr. Fishman, that the three buildings Rose Leaf was servicing 'are yours'"; that an "attorney for Sonder represented in the draft [Agreement] . . . that Rose Leaf could bid on all new units on the East Coast"; and that "Sonder representatives stated on calls and in emails Rose Leaf and Sonder were 'partners.'" *Id.* ¶ 55(b)-(c), (e).

On or about November 22, 2021, the parties entered into the contract entitled "Sonder Housekeeping Services Agreement" (the "Agreement"). *Id.* ¶ 56. The Agreement has an

"Effective Date" of November 22, 2021, *id.* at 1, and appears to have been signed by the parties on December 2, 2021, *id.* at 11.

The "Purpose and Scope" provision of the Agreement states, in relevant part, that Rose Leaf "will provide the Services as described in Attachment A to certain Sonder locations ('Premises') listed in Attachment D."  Agreement § 1.1; *see id.* Attach. A, D.  Attachment A, entitled "Service Requirements," details Rose Leaf's "Cleaning," "Disinfecting," and "Sanitizing" obligations to Sonder under the Agreement.  *Id.* Attach. A. § 1.  Attachment D, entitled "Premises," contains a "[l]ist [of] specific Sonder Premises where services are to be provided."  *Id.* Attach. D (listing "2 Washington St, New York, NY 10004," "1 Platt St, New York, NY 10038," and "'The Nash' 222 E 39th St, New York, NY 10016").

Sections 3.6 and 3.7 feature prominently in Sonder's motion.  Section 3.6 of the Agreement states:

> Sonder may not hire directly or indirectly any employee of Service Provider under any circumstances without Service Provider's express written consent.  This prohibition shall apply for any two (2) year period during and following the separation of employment of any Service Provider employee.  Should Sonder breach this section of the agreement, then and in that event, they shall owe Service Provider equivalent of 1 year's annualized pay rate based on the hourly pay of $30 per hour and based on a current full-time schedule.  This shall be paid as a lump sum by Sonder to Service Provider.

Agreement § 3.6.

Section 3.7 of the Agreement states:

> Sonder shall provide Service Provider with the opportunity to match any competitors' bids for all work as described in Attachment A that arises along the Eastern Seaboard of the continental United States .  The final decision to contract Service Provider or other competitors for work across other markets, regardless of the final bid amount, lies solely with Sonder and bears no impact on this contract.

*Id.* § 3.7.

4

Termination of the Agreement is governed by Section 4.2, which permits either party to terminate "for any reason and without penalty" upon prior written notice.  *Id.* § 4.2.

Section 10.1 limits each party's liability under the Agreement:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER ANY THEORY OF LIABILITY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY SUCH DAMAGES ARISING FROM BREACH OF CONTRACT OR WARRANTY OR FROM NEGLIGENCE OR STRICT LIABILITY), INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, REVENUE, DATA, OR USE, OR FOR INTERRUPTED COMMUNICATIONS, OR FROM ANY DEFECT, ERROR, OR MALFUNCTION OF THE PRODUCTS, EVEN IF THE PARTY HAS BEEN ADVISED OR SHOULD KNOW OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, NEITHER PARTY SHALL BE LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY, OR OTHER THEORY, AT LAW OR IN EQUITY, FOR ANY AMOUNTS AGGREGATING IN EXCESS OF AMOUNTS PAID TO IT UNDER THIS AGREEMENT IN THE TWELVE (12) MONTH PERIOD BEFORE THE CAUSE OF ACTION AROSE.

*Id.* § 10.1.  Finally, the Agreement contains a choice-of-law provision for California law.  *Id.* § 15.15 ("This Agreement, including all documents and exhibits, schedules, attachments, and appendices attached to this Agreement and thereto, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of California without regard to the conflict of laws provisions thereof . . . .").

On January 20, 2022, "[l]ess than two months after entering into the [Agreement] . . . and without prior warning," Rose Leaf received a "Notice of Termination. . . . stat[ing] that 'Sonder will no longer need [Rose Leaf's] services" and that Sonder "feel[s] it is in Sonder's best interest to move in a different direction.'"  Am. Compl. ¶ 75.  Approximately one to two weeks later, in a telephone call among Rosenblatt of Rose Leaf and Keefe and Zaccarino of Sonder, Keefe said,

"for the first time, . . . that the contract was terminated due to the quality of Rose Leaf's cleaning services in the past few months." *Id.* ¶¶ 77-78. Rosenblatt "separately spoke to Alan Johnston, Sonder's General Manager, on or about January 28, 2022, who also cited 'poor quality.'" *Id.* ¶ 80. This, Rose Leaf alleges, "made absolutely no sense," *id.* ¶ 79, as "Rose Leaf [had] never received any negative evaluations from Sonder," *id.* ¶ 82.

Rose Leaf later learned that Sonder had contracted with EMaids to replace Rose Leaf. *Id.* ¶ 89. "Through Sonder's directions and interventions, EMaids hired the majority of Rose Leaf's employees, . . . . deplet[ing] Rose Leaf's workforce." *Id.* ¶¶ 90-91. Moreover, "Sonder replaced Rose Leaf with EMaids[] without providing Rose Leaf an opportunity to match or beat the price," which, according to Rose Leaf, violated Section 3.7 of the Agreement. *Id.* ¶ 92. Rose Leaf also "learned that on or about January 17, 2022 – just days before Sonder notified Rose Leaf that it was terminating [the Agreement] – a Sonder employee named Yoialeen Russo sent a WhatsApp audio message in Spanish to a group of most of Rose Leaf's housekeeping employees." *Id.* ¶ 112. This audio message allegedly demonstrates that "Sonder actively coordinated interviews for Rose Leaf's staff while they were still employed by Rose Leaf and prior to Sonder notifying Rose Leaf that it was terminating [the Agreement]." *Id.* ¶¶ 113-114.[2]

---

[2] The transcribed audio message reads as follows:

> Good afternoon team. I'm sending you the number, the first number I sent to most of you. It seems that they changed the location from Long Island City. I just spoke to one of the managers from the company and I explained to him the situation and the necessity of each one of you. He says that if you can call him and be available tomorrow between the hours of 10:00 am to 1:00 pm, so he can help everyone. I explained to him everything.
>
> This is the new office of the company and he already knows. Please be available some to go tomorrow. Please go; he is going to be waiting and he also said call him when you are on your way.

**B.      Procedural History**

On June 13, 2022, Rose Leaf filed suit against Sonder in the Supreme Court of New York, New York County.  *See* ECF No. 1 (Not. of Removal) Ex. A (Compl.).  Sonder removed the case on August 31, 2022, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Not. of Removal ¶ 7.  On September 13, 2022, Sonder filed a letter "advis[ing] the Court that it intend[ed] to file a Rule 12(b)(6) motion to dismiss the Complaint."  ECF No. 11.  After the Court directed Rose Leaf to respond to Sonder's pre-motion letter, Rose Leaf filed a letter stating that it "intend[ed] to amend its complaint prior to the filing or resolution of defendant['s] . . . anticipated motion to dismiss." ECF No. 20.

On December 19, 2022, Rose Leaf amended the Complaint.  The Amended Complaint contains four counts: (I) breach of contract; (II) breach of the implied covenant of good faith and fair dealing; (III) fraud in the inducement; and (IV) tortious interference with prospective economic advantage.  *See generally* Am. Compl.

Sonder moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* ECF Nos. 42 (Mot.), 43 (Mem.).  Rose Leaf filed its opposition, *see* ECF No. 50 (Opp.), and Sonder replied, *see* ECF No. 52 (Reply).  Plaintiff requested oral argument on Defendant's motion, *see* ECF No. 53, which the Court granted, *see* ECF No. 54.[3] Oral argument was held on May 17, 2024.  *See* ECF No. 65 (Tr.).

## II.      LEGAL STANDARDS

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com,*

---

Am. Compl. ¶ 113.

[3] This case, originally assigned to the Honorable Lorna G. Schofield, was reassigned to this Court in 2023.

*Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all inferences in favor of the plaintiff," *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006) (quoting *Twombly*, 425 F.3d at 106)).

"[T]he court's task is to 'assess[] the legal feasibility of the complaint,' . . . ." *Pentacon BV v. Vanderhaegen*, No. 23 Civ. 2172 (KPF), 2024 WL 1255992, at *6 (S.D.N.Y. Mar. 25, 2024) (second alteration in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)) (further clarifying that, on a motion to dismiss, the court does not "'weigh the evidence.'").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At the motion to dismiss stage, the court "confine[s] its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted).

## III.    DISCUSSION

### A.    Choice of Law

#### 1.    California Law Governs Counts I and II of the Amended Complaint.

As a threshold matter, the Court must determine whether to apply New York or California law to Counts I and II of the Amended Complaint, which comprise Rose Leaf's claims "arising out of or relating to" the Agreement.  Agreement § 15.1.  "At the outset of its analysis, 'a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state.'" *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (cleaned up) (citation omitted).  "Under New York law, 'courts will generally enforce choice-of-law clauses,'

because 'contracts should be interpreted so as to effectuate the parties' intent.'" *Id.* (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015)).

Here, the Agreement contains an express choice-of-law provision stating that "all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of California, . . . without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of California." Agreement § 15.15. Rose Leaf resists the application of California law on two principal grounds. First, Rose Leaf argues that "New York is the center of gravity." Opp. at 6. Second, Rose Leaf contends that application of California law "would violate New York's fundamental principles protecting against raiding of employees through dishonest means." *Id.* at 6-7.

"New York courts *used* to look to the kinds of considerations invoked by [Rose Leaf] — significant contacts, interest in the litigation, and the public policy of the foreign jurisdiction —. . . . however, the law took a turn when the New York Court of Appeals . . . . [held] that 'New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract.'" *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 91 (S.D.N.Y. 2021) (quoting *Ministers*, 26 N.Y. 3d at 474)). In short, "when parties include a choice-of-law provision in a contract, they intend that the law of the chosen state—and no other state—will be applied." *Ministers*, 26 N.Y. 3d at 466; *see Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 Civ. 4819 (GBD), 2018 WL 6786338, at *22 (S.D.N.Y. Oct. 25, 2018) (holding that the

contracts at issue "contain a Delaware choice-of-law provision . . . . [t]herefore, Delaware law governs).

Thus, California law applies to Counts I and II of the Amended Complaint, for breach of express and implied contract, respectively.

### 2. New York Law Governs Counts III and IV of the Amended Complaint.

The parties assume that New York law applies to Rose Leaf's tort claims. *See, e.g.,* Mem. at 18 ("New York law governs the resolution of Counts III and IV."); Opp. at 16-24 (invoking New York law in challenging tort claims). Where, as here, the parties "agree[] to the application of the forum law, their consent concludes the choice of law inquiry." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). "Although [Rose Leaf] does not explicitly consent to the application of New York law [to the tort claims in Counts III and IV] in its opposition brief, it does so implicitly by citing exclusively to New York law." *Id.*; *see* Opp. at 24-30.

Because "[t]he parties' briefs assume that New York substantive law governs the issues presented," *Arch Ins. Co.*, 584 F.3d at 39, the Court "'follow[s] their lead' and applies New York law to [Rose Leaf's tort] claims," *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 246 n.4 (S.D.N.Y. 2023) (citation omitted).

## B. Count I: Breach of Contract

Rose Leaf alleges two breaches of the Agreement. First, Rose Leaf claims that Sonder breached Section 3.6 of the Agreement "by directly or indirectly hiring nearly all of Plaintiff's employees and failing to pay Rose leaf liquidated damages," Opp. at 5, for which Rose Leaf seeks $2,628,000 in liquidated damages, Am. Compl. ¶ 105. Second, Rose Leaf avers that Sonder "breached Section 3.7 by terminating the Agreement without giving Rose Leaf the

opportunity to provide a bid to match that of another vendor," Opp. at 5, for which Rose Leaf

seeks $1,086,500.00 in lost profits, Am. Compl. ¶ 105.

The claim for breach of Section 3.6 fails because Section 3.6 is unenforceable under

California law.  The claim for breach of Section 3.7 of the Agreement fails because Rose Leaf

does not allege a cognizable theory of damages.

### 1.    Section 3.6 of the Agreement is Unenforceable under California Law.

Section 16600 of California Business & Professions Code ("Section 16600") provides, in

pertinent part, that "every contract by which anyone is restrained from engaging in a lawful

profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code §

16600(a).  Moreover, Section 16600 is "not [] limited to contracts where the person being

restrained from engaging in a lawful profession, trade, or business is a party to the contract."  *Id.*

(c).  The California Supreme Court has explained that Section 166600 "evinces a settled

legislative policy in favor of open competition and employee mobility."  *Edwards v. Arthur

Andersen LLP*, 44 Cal. 4th 937, 946 (2008).

California courts have consistently held that Section 16600 bars enforcement of

contractual provisions in which a "business that provides the services of its employees directly to

a customer [ ] seek[s] to deter the customer from hiring the employees away" by "attempt[ing] to

obligate customers not to hire its employees."  *Thomas Weisel Partners LLC v. BNP Paribas*,

No. 07 Civ. 6198 (MHP), 2010 WL 546497, at *4 (N.D. Cal. Feb. 10, 2010).  "California law

equates this type of 'no hire' provision with a covenant not to compete because, like a covenant

not to compete, such a provision restricts the ability of the employees in question to engage in

their profession."  *Id.* (citing *VL Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708, 716–17, 61

Cal.Rptr.3d 818 (2007)).

Here, Section 3.6 of the Agreement prohibits Sonder, a "customer," from "hir[ing]" directly or indirectly any employee of [Rose Leaf] under any circumstances without [Rose Leaf's] express written consent . . . for any two (2) year period during and following the separation of employment of any [Rose Leaf] employee." Agreement § 3.6. Thus, through Section 3.6 of the Agreement, Rose Leaf is "seek[ing] to deter" Sonder "from hiring the employees away" by "attempt[ing] to obligate [Sonder] not to hire its employees." *Thomas Weisel Partners LLC*, 2010 WL 546497, at *4-6 (granting dismissal under Section 16600 to the extent plaintiff's claim relied on defendant's contractual obligation not to "recruit, hire or attempt to recruit or hire," plaintiff's employees after defendant stopped working for plaintiff).

Rose Leaf attempts to save its claim for breach of Section 3.6 by arguing, *inter alia*, that Section 16600 "has traditionally been applied to business competitor scenarios that are harmful to an employee, which is not the case here[,]" as Rose Leaf and Sonder are "clearly not competitors." Opp. at 7-8; *see* Am. Compl. ¶ 99 ("At no time have Rose Leaf and Sonder been competitors."). That is not the question. Instead, "the question [ ] is whether, under the literal terms of the statute, 'anyone is restrained from engaging in a lawful profession, trade, or business of any kind.'" *SriCom, Inc. v. EbisLogic, Inc.*, No. 12 Civ. 00904 (LHK), 2012 WL 4051222, at *5 (N.D. Cal. Sept. 13, 2012) (holding that Section 16600 voids the "provision preventing [defendant] from soliciting or hiring [plaintiff] employees who were 'performing services [to defendant] for a period of one year"). Section 3.6 of the Agreement "unequivocally purports to restrain the [employees that Rose Leaf] had placed with [Sonder] from working directly for [Sonder]." *Id.*; *compare* Agreement § 3.6 ("Sonder may not hire directly or indirectly any employee of Service Provider under any circumstances without Service Provider's express written consent. This prohibition shall apply for any two (2) year period during and following the separation of employment of any Service Provider employee."), *with* Complaint at 11,

*SriCom, Inc.*, 2012 WL 4051222 (N.D. Cal. Sept. 13, 2012) (No. 12 Civ. 00904) ("During the terms of this agreement and for a period of one (l) year after its termination or completion of services hereunder, EBISLOGIC, Inc. agrees that it will not solicit for hire, or hire any of Contractor's (SriCom's) employees who were performing services through EBISLOGIC, INC."). Such a restraint is unenforceable under California law.

The California Court of Appeal's decision in *VL Systems* is instructive.  In *VL Systems*, the contractual provision at issue was entitled "BUYER WILL NOT ATTEMPT TO HIRE SELLER'S PERSONNEL" and purported to preclude the defendant company from hiring any of plaintiffs' employees for a period of twelve months following the termination of the contract.[4] 152 Cal.App.4th at 710.  After the defendant hired one of the plaintiff's employees, the plaintiff sued for breach of the "no-hire" provision.  The court affirmed dismissal of the claim, explaining that "[f]reedom of contract is an important principle . . . . This type of contractual [no-hire] provision, however, may seriously impact the rights of a broad range of third parties[,]" namely "VLS employees who actually performed work for [the defendant] . . . [and] all of those who did not[.]"  *Id.* at 713; *see also Beaulieu Group, LLC v. Bates*, No. 15 Civ. 1090 (JGB) (KKX), 2015

---

[4] That provision stated:

> BUYER WILL NOT ATTEMPT TO HIRE SELLER'S PERSONNEL.  Any hiring, or offer of employment entitles, but does not require VLSystems, Inc. to immediately cancel the performance period of this agreement.  If, during the term of, or within (12) months after the termination of the performance period of this agreement, buyer hires directly, or indirectly contracts with any of seller's personnel for the performance of systems engineering and/or related services hereunder, BUYER AGREES TO PAY TO THE SELLER SIXTY PERCENT (60%) OF EITHER THE NEW ANNUAL COMPENSATION PAYABLE TO SUCH PERSONNEL or the fees paid to, or in favor of such personnel for one (1) year after such personnel separates from service with seller, whichever is applicable, as liquidated damages.

*VL Systems*, at 710.

WL 13950815, at *5 (C.D. Cal. Sept. 17, 2015) ("Paragraph 10 plainly prohibits [defendant]

from 'hir[ing] [or] attempt[ing] to hire ... any person then employed by or under contract with

[plaintiff] within one year following the termination of his employment.  That no-hire provision

contravenes Section 16600 and is thus void and unenforceable." (second and third alteration in

original)).

Accordingly, Section 3.6 is "void and unenforceable" under California law, *Beaulieu*

*Group, LLC v. Bates*, 2015 WL 13950815, at *5, and Rose Leaf's breach of contract claim

arising out of that provision is dismissed.[5]

### 2.    Rose Leaf Fails to Allege Cognizable Damages in Connection with Sonder's Alleged Breach of Section 3.7 of the Agreement.

Rose Leaf's second breach of contract theory is that Sonder violated Section 3.7 of the

Agreement by "replac[ing] Rose Leaf with EMaids, without providing Rose Leaf an opportunity

to match or beat the price,"[6] Am. Compl. ¶ 92, for which Rose Leaf seeks "$1,086,500.00 in lost

profits, $2,628,000 in liquidated damages pursuant to Section 3.6 of the New Services

---

[5] Sonder also argues that "Section 3.6 offends the Sherman Act," Mem. at 18, to which Rose
Leaf responds that "the Sherman Act is inapplicable here . . . . [as] Rose Leaf and Defendant
were in a vertical, vendor/customer relationship, not a horizontal/competitive relationship," Opp.
at 16.  In addition, Sonder contends that "public policy is clearly moving in a direction that
agreements that restrict mobility, particularly mobility of lower-income workers like
housekeepers, are not enforceable."  Tr. 16:23-25; *see generally* ECF No. 57 (Def. Ltr.) at 2
(arguing that "the principle of employee mobility set forth in Section 16600 is consistent with
New York public policy").  In light of the Court's determination that California law precludes
enforcement of Section 3.6, the Court need not and does not reach the parties' arguments
regarding the Sherman Act or public policy.

[6] Section 3.7 provides:

> Sonder shall provide Service Provider with the opportunity to match
> any competitors' bids for all work as described in Attachment A that
> arises along the Eastern Seaboard of the continental United States .
> The final decision to contract Service Provider or other competitors
> for work across other markets, regardless of the final bid amount,
> lies solely with Sonder and bears no impact on this contract.

Agreement § 3.7.

Agreement, contractual attorneys' fees and costs," *id.* ¶ 105.  Rose Leaf's claim for breach of

Section 3.7 fails because lost profits cannot be recovered under the Agreement.[7]

"To state a breach of contract claim under California law, plaintiffs must show: (1) there

was a contract, (2) plaintiff either performed the contract or has an excuse for nonperformance,

(3) defendant breached the contract, and (4) plaintiff suffered damages as a result of defendant's

breach." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) (citing *Hamilton v.

Greenwich Invs. XXVI, LLC*, 195 Cal.App.4th 1602, 126 Cal. Rptr. 3d 174, 183 (2011)).

"Under California law, parties may agree by their contract to the limitation of their

liability in the event of a breach." *Nat'l Rural Telecomms. Coop*. v. *DIRECTV, Inc.*, 319 F.

Supp. 2d 1040, 1048 (C.D. Cal. 2003) (citing *Artukovich v. Pac. States Cast Iron Pipe Co.*, 78

Cal. App. 2d 1, 4 (1947) and *Markborough Cal., Inc. v. Super Ct.*, 227 Cal. App. 3d 705, 714

(1991)).  Contractual limitations of liability are "'intended to protect the wrongdoer defendant

from unlimited liability.'"  *Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12 Civ.

1608 (JGB) (ANX), 2014 WL 3791567, at *5 (C.D. Cal. July 31, 2014) (quoting *Food Safety Net*

---

[7] As for "liquidated damages pursuant to Section 3.6 of the New Services Agreement," *id.* ¶ 105,
Rose Leaf cannot recover such damages because, as explained *supra*, Section 3.6 is
unenforceable under California law.  With respect to the "contractual attorneys' fees and costs"
sought in connection with Counts I and II, Am. Compl. ¶¶ 105, 119, this appears to refer to
Section 15.16 of the Agreement, which provides: "The non-prevailing party in any dispute under
this Agreement shall pay all costs and expenses, including expert witness fees and reasonable
attorney's fees, incurred by the prevailing party in any dispute arising out of this Agreement."
Agreement § 15.16.  The prevailing party's right to recover attorneys' fees is separate from the
question of whether Rose Leaf has stated a claim for breach of Section 3.7, a necessary element
of which is cognizable damages.  *See e.g., X Corp. v. Ctr. for Countering Digital Hate, Inc*., No.
23 Civ. 3836 (CRB), 2024 WL 1246318, at *13 (N.D. Cal. Mar. 25, 2024) ("[C]ognizable
damages are an element of a breach of contract claim, and either they have been plausibly pled or
they have not.").  At oral argument, the Court asked Rose Leaf's counsel whether, "[a]ssuming [
] that the limitation of liability provision in 10.1 precludes recovery of lost profits and liquidated
damages, [Rose Leaf] ha[s] any other cognizable theory of recovery?"  Tr. 21:10-13.  Counsel
responded that Rose Leaf has "out-of-pocket" damages, including for "investments that [Rose
Leaf] made in [its] business[.]"  *Id.* 21:15-20.  The Amended Complaint does not plead such
damages, however.

*Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012)).  "Clauses of this type 'have long been recognized as valid in California.'"  *Id.* (quoting *Markborough Cal., Inc.*, 227 Cal.App.3d at 714)).  "With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable . . . or contrary to public policy."  *Id.* (quoting *Food Safety Net Servs.*, 209 Cal. App. 4th at 1126).

Here, Section 10.1 of the Agreement limits each party's liability "for any indirect, incidental, special, or consequential damages of any kind . . . including, without limitation, *loss of profits*[.]"  Agreement § 10.1 (emphasis added).  Rose Leaf does not argue that Section 10.1 is "unconscionable."  *See Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No. 12 Civ. 1608 (JGB) (ANX), 2014 WL 3791567, at *5 (C.D. Cal. July 31, 2014) (quoting *Food Safety Net Servs.*, 209 Cal. App. 4th at 1126)  (recognizing that California allows limitation of liability clauses).  Instead, it argues that this limitation of liability is void under California Civil Code Section 1668 ("Section 1668"), which provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Opp. at 15 (quoting Cal. Civ.Code § 1668).

As an initial matter, "[b]ased on the plain language, the Court is skeptical of the applicability of Section 1668 to the claims at issue here."  *Peregrine Pharms., Inc.*, 2014 WL 3791567, at *7 (C.D. Cal. July 31, 2014).  While Section 1668 applies to contracts "which have for their object . . . . to exempt anyone from responsibility for his own fraud," Cal. Civ.Code § 1668, the Agreement's limitation of liability section "merely limit[s] the amounts and types of damages available to [either party] for these violations," *Peregrine Pharms., Inc.*, 2014 WL 3791567, at *7 (C.D. Cal. July 31, 2014) (upholding limitation of liability clause that operated to

"bar[ ] recovery of consequential, incidental, special, and indirect damages as well as damages in excess of the amount paid by [plaintiff] to [defendant] for its work under the [contract]").

Similar limitation of liability clauses are routinely upheld by courts applying California law. *See, e.g.*, *Chou v. Charles Schwab & Co.*, No. 22-15549, 2023 WL 2674367, at *1 (9th Cir. Mar. 29, 2023) (affirming dismissal of breach of contract claim as "foreclosed by the Agreement's limitation of liability provisions" which state, *inter alia*, that defendant "'will not be liable for *lost profits*'" (emphasis added)); *Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 771 F. App'x 732, 734 (9th Cir. 2019) (holding that "contractual provision limit[ing] damages to the amount that [plaintiff] paid on the contract . . . . is enforceable with respect to [plaintiff's] breach of contract claim, because it was bargained-for by parties of equal bargaining power"); *Food Safety Net Servs.*, 209 Cal. App. 4th at 1126 ("conclud[ing] that the [limitation of liability] clause effectively limits [counterclaim-plaintiff's] liability for breaches of contractual obligations" where clause precluded liability "for indirect, special, incidental or consequential damages *including (but not limited to) damages for loss of profit*" and provided that any damages "shall not exceed an amount equal to the lesser of (a) damages suffered by you as the direct result thereof, or (b) the total amount paid by you . . . for the services herein covered" (emphasis added)).

In short, the limitation of liability in Section 10.1 applies to Rose Leaf's breach of contract claim and precludes recovery of lost profits. As Rose Leaf has not alleged any cognizable theory of recovery, this claim is dismissed. *See Chauhan v. Google LLC*, No. 23 Civ. 00702 (KAW), 2023 WL 5004078, at *3 (N.D. Cal. Aug. 4, 2023) (dismissing breach of contract claim "because even if Plaintiff could plead a breach, Plaintiff is unable to plead damages due to the limitation of liability clause").

**C.      Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count II of the Amended Complaint alleges that Sonder violated the implied covenant of good faith and fair dealing by "directly[] or indirectly . . . hir[ing] most of Rose Leaf's staff, . . . . [in] bad faith," which "caused Rose Leaf to cease operations." Am. Compl. ¶¶ 116-18.  In connection with this claim, Rose Leaf demands the same damages sought for Sonder's alleged contractual breaches: ""Rose Leaf has suffered and continues to suffer damages to be determined at trial and currently exceeding $1,086,500.00 in lost profits, $2,628,000 in liquidated damages pursuant to Section 3.6 of the New Services Agreement, contractual attorneys' fees and costs." Am. Compl. ¶¶ 119.  Sonder argues that Count II fails because "it is duplicative of the breach of contract claim" under Section 3.6.  Mem. at 17 (citations omitted) (cleaned up).  Sonder also contends that "the Agreement expressly stated that it was governed by California law and that Plaintiff would comply with all laws" and, therefore, "compliance with the law, including laws that prohibit no-hire agreements, was within the expectations of the parties and cannot constitute a breach of the implied covenant." *Id.* (citations omitted) (cleaned up).  Rose Leaf rejoins that "the allegations supporting [Count II] are distinct from the breach of contract claims and not 'duplicative.'" Opp. at 16.  Ultimately, the claim's fatal shortcoming is Rose Leaf's failure to allege cognizable damages.

 "Every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Sunfarms, LLC v. Eurus Energy Am. Inc.*, No. 18 Civ. 0058 (AGS), 2018 WL 6617635, at *5 (S.D. Cal. Dec. 18, 2018) (citation omitted).  "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F.Supp.2d 1012, 1021–22 (N.D. Cal. 2009) (citing *Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.App.4th 1026,

1031 (1992)). "California law requires that a claim for breach of the implied covenant of good faith and fair dealing 'go beyond the statement of a mere contract breach' and not 'rely on the same alleged acts or simply seek the same damages or other relief already claimed in a companion contract cause of action.'" *Env't Furniture, Inc. v. Bina*, No. 09 Civ. 7978 (PSG) (JCX), 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010) (cleaned up) (citation omitted). However, courts applying California law have sustained claims for breach of the implied covenant of good faith and fear dealing where the same allegations that also support a claim for breach of an unenforceable "no-hire" provision. *See Beaulieu Grp., LLC*, 2015 WL 13950821, at *7 ("[T]he allegations that Defendant solicited [Plaintiff's] employees to leave the company . . . can no longer support a breach of contract claim to the extent that such a claim is predicated on Paragraph 10 of the Agreement, which this Court held is void and unenforceable in its entirety. That ruling, however, does not prohibit Plaintiff from claiming that Defendant's solicitation of Plaintiff's employees constituted unfair dealing that had the effect of frustrating Plaintiff's benefit of the contract.").

Here, Rose Leaf "has alleged that [Sonder] acted to deprive [Rose Leaf] of the benefits under [the Agreement] by directly hiring the [employees] [Rose Leaf] had placed . . . . Such conduct could violate the implied covenant of good faith and fair dealing even if it does not violate the literal terms of valid contracts[.]" *SriCom, Inc. v. EbisLogic, Inc.*, No. 12 Civ. 00904 (LHK), 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012) (granting motion to dismiss breach of contract claim predicated on "no-hire" provision barred by Section 16600, but denying motion as to claim for breach of the implied covenant of good faith and fair dealing based on same factual allegations).

In the end, the claim for breach of the implied covenant of good faith and fair dealing falters because Rose Leaf "has failed to allege cognizable damages caused by the purported

breach." *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 790 (N.D. Cal. 2021) (dismissing claim).

As previously explained, *see supra* Section III.B.2, the limitation of liability in Section 10.1 is

enforceable and precludes recovery under the Agreement "for any indirect, incidental, special, or

consequential damages of any kind . . . including, without limitation, loss of profits[.]"

Agreement § 10.1.  That limitation of liability "prohibit[ing] a recovery for breach of contract. . .

. necessarily encompasses breaches of the covenant of good faith implied within [the]

contract[.]" *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,* 209 Cal. App. 4th 1118, 1127

(2012); *see also Mundy v. Household Finance Corp.*, 885 F.2d 542, 544 n.1 (9th Cir. 1989)

("[T]he California Supreme Court has spoken decisively [in saying] ... an allegation of breach of

the implied covenant is a purely contractual claim.").  Accordingly, the Court dismisses Rose

Leaf's claim for breach of the implied covenant of good faith and fair dealing.  *See Gardiner v.

Walmart Inc*., No. 20 Civ. 4618 (JSW), 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021)

(dismissing claim for breach of implied covenant of good faith and fair dealing after finding that

"the limitation of liability provision in the [contract] bars Plaintiff's contract claims"); *Fuhu, Inc.

v. Toys "R" US, Inc.*, No. 12 Civ. 2308 (WQH) (WVG), 2013 WL 12097569, at *7 (S.D. Cal.

Mar. 1, 2013) (granting motion to dismiss on ground that "the limitation of liability provision

bars the claim for breach of the implied covenant of good faith and fair dealing").

**D.      Count III: Fraud in the Inducement**

"[A]llegations of fraud must '[i] specify the statements that the plaintiff contends were

fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and

[iv] explain why the statements were fraudulent.'" *Exch. Listing, LLC v. Inspira Techs., Ltd.*,

661 F. Supp. 3d 134, 156 (S.D.N.Y. 2023) (quoting *Nakahata v. New York-Presbyterian

Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013)); *see* Fed. R. Civ. P. 9(b) ("In alleging

fraud . . . , a party must state with particularity the circumstances constituting fraud[.]").  To state

a claim for fraudulent inducement under New York law, "the plaintiff must show that: '[i] the defendant made a material false representation, [ii] the defendant intended to defraud the plaintiff thereby, [iii] the plaintiff reasonably relied upon the representation, and [iv] the plaintiff suffered damage as a result of such reliance.'" *Id.* (quoting *Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 30 (2d Cir. 2018)).  Moreover, "[i]t is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Columbo v. Philips Bryant Park LLC*, No. 22 Civ. 775 (RA), 2024 WL 1138942, at *10 (S.D.N.Y. Mar. 15, 2024) (dismissing fraudulent inducement claim where plaintiff did not allege "any 'separate' legal duty other than Defendants' duty to perform under the contract" and where "[t]he same [allegedly fraudulent] statements . . . were also made in furtherance of [the] contract") (quoting *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012)).  Rather, "'parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages.'" *Id.* (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007));.

The Amended Complaint alleges that certain representatives of Sonder told Rose Leaf that it "would act as the 'primary' housekeeping vendor for Sonder"; that the relationship between the two companies "was 'long-term' with more opportunities for growth"; that "Rose Leaf and Sonder were 'partners'"; that "Sonder's in-house attorney represented in the draft [Agreement] that Rose Leaf could bid on all new units on the East Coast"; and that Sonder's representative said that "Rose Leaf had opportunities for growth with Sonder beyond the [Agreement]."  Am. Compl. ¶ 121(a)-(e).  Rose Leaf argues that these representations were false

because "Sonder did not intend to continue with Rose Leaf." *Id.* ¶ 123; Opp. at 25.  That is not sufficient to sustain Rose Leaf's claim.

Under New York law, "[a]llegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraudulent inducement] claim." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006).  "Indeed, 'it is a general rule that a claim of intentional misrepresentation 'cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct,' because 'mere unfulfilled promissory statements as to what will be done in the future are not actionable.'" *Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*, No. 17 Civ. 8078 (RA), 2018 WL 4757961, at *4 (S.D.N.Y. Sept. 30, 2018) (citation omitted) (dismissing plaintiff's fraudulent inducement claim based on allegations that defendant "promis[ed] an investment" "so that [defendant] could delay . . . until [plaintiff's competitor] was able to compete").

Rose Leaf's argument that Sonder "made numerous *promises* and assurances to Rose Leaf, but . . . *had no intention to continue* with Rose Leaf's management and the Rose Leaf business," Opp. at 26 (emphasis added), "reveals that its allegations of fraudulent inducement are premised on [Sonder's] lack of intent to abide by its representations in the future." *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 595 (S.D.N.Y. 2021) (dismissing counterclaim for fraudulent inducement where defendant argued that "[plaintiff] had no intention of providing [defendant' with the necessary time to 'get the details required' for [contemplated contractual engagement,] despite their representations to the contrary").  The Court therefore dismisses Count III of the Amended Complaint.

**E.    Count IV:  Tortious Interference with Prospective Economic Advantage/At-Will Employment**

"To prevail on a claim for tortious interference with business relations—also known as tortious interference with prospective economic advantage—under New York law, a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).[8]  New York law is clear that "the 'wrongful means' element sets a high bar." *Id.*  "[A] claim for tortious interference with business relations requires a plaintiff to show, 'as a general rule,' that 'the defendant's conduct . . . amount[ed] to a crime or an independent tort.'" *Id.* (quoting *Carvel Corp*, 3 N.Y.3d at 190).  "New York courts have recognized an exception to this rule 'where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* (quoting *Carvel Corp*., 3 N.Y.3d at 190).  "But this exception is narrow: When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown." *Id.* (citation omitted).

"Moreover, a plaintiff must allege conduct directed at its customers or other business." *Insight Glob., LLC v. Wenzel*, No. 17 Civ. 8323 (PGG), 2018 WL 11318728, at *3 (S.D.N.Y. Aug. 27, 2018).  That is so because "'[c]onduct constituting tortious interference with business relations is, by definition, *conduct directed not at the plaintiff itself*, but at the party with which

---

[8] "Courts refer to this cause of action by a number of different names, including prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations." *Conflict Int'l, Inc. v. Komorek*, No. 23 Civ. 02165 (ER), 2024 WL 1347577, at *13 (S.D.N.Y. Mar. 29, 2024) (quoting *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 465 n.23 (S.D.N.Y. 2006)).  "But regardless of the term used, 'the same legal standards apply.'" *Id.* (citation omitted).

the plaintiff has or seeks to have a relationship.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 192) (emphasis added).

Rose Leaf argues that its "claim for tortious interference with prospective economic advantage is valid. . . . [because] Rose Leaf has alleged that Defendant engaged in wrongful means, such as fraud." Opp. at 29. The Amended Complaint indeed alleges that Sonder, "[b]y engaging in fraud, as described in Count III supra, or other independent wrongs *against Rose Leaf*, [ ] interfered with and destroyed Rose Leaf's relationships with its employees." Am. Compl. ¶ 142 (emphasis added). "None of these allegations state a claim for tortious interference with economic advantage, however, because they involve conduct directed at Plaintiff[]." *Conflict Int'l, Inc. v. Komorek*, No. 23 Civ. 2165 (ER), 2024 WL 1347577, at *14 (S.D.N.Y. Mar. 29, 2024) (dismissing claim for tortious interference with economic advantage and holding that allegations that defendant "resigned without notice" and "attempted to poach employees" were "unavailing because they do not show that any of [defendant's] acts were directed at [plaintiff's] clients").

One allegation in the Amended Complaint requires separate analysis: that a Sonder employee named Yoialeen Russo sent an audio message "to a group of most of Rose Leaf's housekeeping employees." Am. Compl. ¶ 112. Unlike the rest of the tortious conduct alleged in the Amended Complaint, this claim properly concerns "conduct . . . directed 'at the party with which the plaintiff has or seeks to have a relationship,' rather than at the plaintiff." *Cf. Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933 (ER), 2021 WL 4332258, at *13 (S.D.N.Y. Sept. 22, 2021) (dismissing claim for tortious interference with prospective economic advantage because "nowhere in the [complaint] does [plaintiff] allege any action specifically targeting these third parties"). However, Rose Leaf "does not identify in its complaint or its opposition how Defendant's conduct concerning [the audio message sent to Rose Leaf's employees] amounts to

a crime or independent tort." *Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 21 Civ. 1337 (GHW), 2022 WL 603999, at *11 (S.D.N.Y. Feb. 28, 2022).  Thus, Rose Leaf "must plead that the exception applies—namely, that Defendant engaged in its conduct 'for the sole purpose of inflicting intentional harm' on Plaintiff." *Id.* at *12 (quoting *Carvel Corp.*, 3 N.Y.3d at 190). Not only does the Amended Complaint lack any such allegation, but Rose Leaf's allegations also show that Sonder acted in "normal economic self-interest." *16 Casa Duse, LLC*, 791 F.3d at 261 (citation omitted).

Rose Leaf avers, for example, that Sonder "solicited a less expensive housekeeping provider."  Am. Compl. ¶ 137.  Indeed, the gravamen of the Amended Complaint is Rose Leaf's contention that, "[t]hrough Sonder's directions and interventions, EMaids hired the majority of Rose Leaf's employees, despite Sonder's purported reasons of not being satisfied with the performance of these same employees," and that this "'poor performance' justification . . . was actually a pretext for Sonder having located a less expensive housekeeping [service]." *Id.* ¶¶ 87-90; *see also* Opp. at 7 ("Defendant fraudulently . . . [found] a less expensive vendor to replace Plaintiff [and] cause[d] Plaintiff's housekeeping staff to be hired by the new vendor[.]").

"In other words, by Plaintiff's own allegations, Defendant acted in its own economic self-interest—and not for the sole purpose of harming Plaintiff—by preventing [former employees] from working for Plaintiff." *Premier Med. Sys., LLC*, 2022 WL 603999, at *12 (S.D.N.Y. Feb. 28, 2022) (dismissing claim where "the amended complaint expressly alleges that Defendant blocked [two of plaintiff's former employees] from working for Plaintiff 'in the hope of continuing to charge [Plaintiff] $1,500 a day for its deficient service."); *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, 449 F. Supp. 3d 385, 402 (S.D.N.Y. 2020) (dismissing tortious interference with prospective economic advantage counterclaim where defendant "ha[d] not alleged that [plaintiff] acted solely for inflicting intentional harm; on the contrary,

[defendant] alleged that [plaintiff] hired trained employees that would have otherwise cost 'thousands of dollars and weeks of time to develop and train,' ostensibly in its economic self-interest.").

Acknowledging this core defect, Rose Leaf maintains that, "[w]hile a claim for tortious interference with prospective economic advantage requires a showing that the wrongful conduct was exerted against a third party, it is premature to find that no undue pressure or other wrongful behavior was exerted by Defendant against Rose Leaf's employees." Opp. at 30. This argument misconstrues the Rule 12(b)(6) standard: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the Amended Complaint is devoid of any factual allegation that Sonder's alleged wrongful conduct was exerted against a third party.

Accordingly, Count IV for tortious interference with prospective economic advantage is dismissed.

### F.    Leave to Amend

In the Second Circuit, "it is the usual practice upon granting a motion to dismiss to allow leave to replead." *Gluck v. Hecla Mining Co*, 657 F.Supp.3d 471, 490-91 (S.D.N.Y. 2023) (quoting *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Although Rose Leaf has already amended its complaint in response to Sonder's pre-motion letter regarding its anticipated motion to dismiss, "it has not yet had an opportunity to do so in response to an opinion of the Court." *PetEdge, Inc*, 234 F. Supp. 3d at 500. "Accordingly, the Court cannot conclude that allowing [Rose Leaf] to amend once again would be futile, and the Court grants [Rose Leaf] leave do so." *Id.* Rose Leaf is cautioned, however, that the Court is not inclined to allow any further opportunities to amend. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F.

Supp. 3d 435, 443 (S.D.N.Y. 2020) ("[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough." (citing *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003))).

Any amended complaint must be within 30 days of the date of this Order.  If Rose Leaf does not file an amended complaint by the aforementioned deadline, the Court will dismiss the action and enter judgment without further notice.

Finally, Sonder's request that the Court order Rose Leaf "to pay the costs, including attorney's fees, that Sonder incurred to defend this action," Mem. at 25, is denied without prejudice to renewal.

### IV.    CONCLUSION

For the foregoing reasons, Sonder's motion to dismiss is GRANTED without prejudice and the Amended Complaint is dismissed in its entirety.  Rose Leaf is granted leave to amend by 30 days from the date of this Order.

The Clerk of Court is directed to terminate ECF No. 43.

SO ORDERED.

Dated:  August 26, 2024
        New York, New York

_____
JENNIFER H. REARDEN
United States District Judge